NO. 07-05-0284-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 16, 2007
_____

JOSHUA STOCKER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 15,307-A; HONORABLE HAL MINER, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Joshua Stocker, appeals from a conviction for capital murder and a sentence of life imprisonment. By eight issues, appellant contends that the evidence is legally and factually insufficient to sustain a verdict of guilty. We affirm.

Factual Background

Appellant participated in a methamphetamine (meth) distribution ring allegedly headed by Craig Kimberlin. The deceased, Dustin Pool, was the head of a rival meth

distribution organization. Problems developed between the rival meth distribution organizations. Due to what was perceived to be an escalation in the conflict between the two organizations, a plan was organized to kidnap Pool. According to Tori Patrick, she was approached by appellant and Guinn Garcia and requested to lure Pool to her apartment. On or about March 9, 2003, Patrick invited Pool to her apartment and, when he arrived, appellant and his brother, Michael Stocker, were waiting for him inside the apartment. Shortly after Pool arrived, appellant stepped out of a hallway area and assaulted Pool with a fireplace poker, striking Pool in the head. Subsequently, Pool was bound and eventually moved to a farm in Carson County belonging to Michael Elliston. Elliston testified that he was contacted by Kimberlin and requested to assist in moving Pool to his farm. Elliston located a large box-type container that could be used to move Pool. Once Pool was moved to the Elliston farm, he was taken to a second floor area of a shop building where he was bound to a chair and beaten by appellant and other members of the Kimberlin meth distribution organization. A decision was made to move Pool to another location and, at that time, a sock was placed in his mouth and his head was taped up with duct tape. After the first taping of Pool, appellant decided to re-tape him and did so in a manner that did not allow Pool to breathe. Testimony indicated that Pool struggled after the sock was placed in his mouth and the duct tape was wrapped around his head but he ceased to struggle after a few moments. After the taping, Pool was moved to a Lincoln Navigator belonging to Josh Bledsoe, the supplier of meth to the Kimberlin organization. During the process of moving Pool from the upstairs of the Elliston building, Pool was dropped head-first, striking the stair, and was dragged down the stairs such that his head struck each step.

An attempt was made to move Pool to a lake house at Lake Meredith that belonged to a relative of another associate of Craig Kimberlin. This proved unsuccessful and eventually the Lincoln Navigator, with Pool inside, ended up in the garage of the home of another Kimberlin associate in Amarillo. Destry Keeling, another associate of Kimberlin, provided a location to bury the body at an abandoned grain elevator in Randall County, Texas. Pool's body was placed in the bottom of the grain elevator head first and approximately four feet of concrete was placed on top of the body. The burial was completed on March 12, 2003. The body was buried in a manner that the top of the head touched the dirt beneath the concrete. The body was not recovered until June 15, 2003.

During appellant's trial, the State introduced the testimony of Sriphar Natarajan, M.D., the forensic pathologist that performed the autopsy on Dustin Pool. Dr. Natarajan opined that Pool died from either asphyxia or blunt force trauma to the head and that each were fatal to Pool. Dr. Natarajan further testified that the asphyxia alone could have caused the death of Pool. Because of the way the body was wrapped in a plastic tarp prior to burial and the head was encased in duct tape, there was a minimal amount of decomposition of the body, with the greatest amount being on the top part of the head.

The appellant produced testimony from Robert Bux, M.D., medical examiner from Colorado Springs, Colorado. Dr. Bux took issue with some of the protocols used by Dr. Natarajan and some of the conclusions arrived at by Dr. Natarajan. Most significantly, Dr. Bux disagreed with Dr. Natarajan regarding the cause of death. Specifically, Dr. Bux found the existence of insect larvae on the sock to be of significance in determining the time of death. Dr. Bux's conclusion was based primarily on the opinion testimony of appellant's

3

witness, Dr. Neal Haskell, a forensic entomologist. Dr. Haskell opined that the significance of the larvae found on the sock was that it meant that Pool was not alive when the sock was placed in his mouth. Haskell further stated that Pool would have to have been dead for between five and twelve days for the sock to contain the types of larvae that he found on it. Thus, Dr. Haskell concluded that Pool could not have died as a result of asphyxia.

## Standard of Review

When reviewing challenges to both the legal and factual sufficiency of the evidence to support the verdict, we first review the legal sufficiency challenge. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). If the evidence is legally sufficient to support the verdict, we then review the factual sufficiency challenge. See id.

Legal Sufficiency

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). The jury is the sole judge of the weight and credibility of the evidence. Jackson, 443 U.S. at 319.

Factual Sufficiency

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a

4

neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt.  See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006).  In performing a factual sufficiency review, we are to give deference to the fact finder's determinations and may not order a new trial simply because we may disagree with the verdict.  See id. at 417.  As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict.  See id.  Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

**Analysis**

As pertinent to this case, a person commits the offense of capital murder when he commits murder in the course of committing or attempting to commit kidnapping.  See TEX. PEN. CODE ANN. § 19.03(a)(2) (Vernon Supp. 2005).  A person commits murder if he intentionally and knowingly causes the death of an individual.  See TEX. PEN. CODE ANN. § 19.02(b)(1) (Vernon Supp. 2005).  A person commits kidnapping if he intentionally or knowingly abducts another person.  See TEX. PEN. CODE ANN. § 20.03(a) (Vernon Supp. 2005).

The indictment against appellant alleged, in pertinent part, that, "Joshua Stocker, . . . on or about the 9th day of March A.D. 2003, . . . did then and there, in the course of committing or attempting to commit kidnaping of Dustin Pool, intentionally commit murder

5

by intentionally causing the death of an individual, to wit, Dustin Pool, by suffocating Dustin Pool by putting a sock into the throat of Dustin Pool and covering Dustin Pool's mouth with tape. . . ." Because of the manner of the allegation on cause of death, appellant contends that the testimony of Dr. Natarajan is legally insufficient to prove that he committed the charged offense. Appellant posits that (1) Dr. Natarajan testified that the cause of Pool's death was blunt force trauma <u>and</u> asphyxia, therefore, the evidence is legally insufficient to prove that asphyxia caused the death of Pool, as alleged in the indictment, and (2) the testimony of Dr. Haskell demonstrates that the cause of death could not have been asphyxia.

However, when the evidence is reviewed in the light most favorable to the verdict, as required in a legal sufficiency review, <u>Jackson</u>, 443 U.S. at 319, the following becomes clear: (1) the jury heard the testimony regarding the kidnapping, beating, and suffocation of Pool; (2) the jury further heard the testimony of Dr. Natarajan regarding the cause of death; (3) Dr. Natarajan positively stated that placing the sock in the mouth of Pool and taping the mouth and nose area with duct tape would lead to suffocation; and (4) the testimony of the other members of the organization about the reaction of Pool after the sock was placed in his mouth and the taping of his head further confirms that he died by asphyxia. The jury was free to accept or reject this testimony and we give great deference to their fact finding. <u>Adelman v. State</u>, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992). We may not sit as a thirteenth juror and disregard, realign, or weigh the evidence. <u>Moreno v. State</u>, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). Based upon our review of the evidence, we cannot say that the jury was irrational in returning a verdict of guilty.

<u>Jackson</u>, 443 U.S. at 319. Therefore, we overrule appellant's contention that the evidence was legally insufficient.

Having found that the evidence was legally sufficient, we now address appellant's contention that the evidence was factually insufficient. The jury heard the detailed testimony regarding the luring of Pool to Tori Patrick's apartment. The jury heard very detailed testimony about the events following the abduction from several members of the meth distribution organization. They also heard the testimony of Dr. Natarajan regarding the onset of morbidity and when stiffness would disappear and the corresponding testimony of Destry Keeling regarding the stiffness of the body when it was dumped into the grave site. The jury also received evidence of Pool's DNA being found in the apartment and at the Elliston farm. Additionally, the location of the body, the manner in which it was wrapped in a tarp while the head was wrapped in duct tape, and the burial beneath the concrete all confirmed the testimony of the members of the meth distribution organization. The discovery of the implements used to mix the concrete and the barrel used to carry the water to the burial site further confirm the testimony of the participants. Lastly, the appellant made oral statements to a number of participants and strangers detailing his participation in the abduction and murder of Pool. Most, if not all, of the details of his statements were confirmed by physical evidence. After reviewing all of the evidence in a neutral light, we cannot say that the jury was not rationally justified in finding the appellant guilty beyond a reasonable doubt. <u>Watson</u>, 204 S.W.3d at 415. We cannot point to any objective basis in the record for concluding that the great weight and preponderance of the evidence contradicts the jury's verdict. <u>Id</u>. at 417.

7

Appellant points to the testimony of Dr. Bux and Dr. Haskell to demonstrate that the jury's verdict was contradicted by the great weight and preponderance of the evidence. Dr. Bux disagreed with Dr. Natarajan, the examining pathologist, regarding the time of death. When the testimony of Dr. Bux is examined closely, it becomes apparent that the disagreement with Dr. Natarajan has to do with the failure of Dr. Natarajan to collect entomological samples. This becomes important only because of the testimony of Dr. Haskell. Dr. Haskell, a forensic entomologist, opined that, from the samples of insects he collected from the sock that came from Pool's mouth, Pool had to be dead for five to twelve days before the sock was placed in his mouth. From this calculation, appellant then contends that the testimony of Dr. Natarajan regarding cause of death must be wrong and therefore, contrary to the indictment, Pool did not die from asphyxia caused by the sock and tape.

However, Dr. Haskell admitted that, when he prepared his findings, he did not review the statements of any other witness. His conclusion disregards the testimony of the eyewitnesses about the events leading up to the burial of Pool under four feet of concrete, most significantly that Pool stopped struggling within minutes of appellant re-taping Pool's head in a manner that prevented him from breathing. Likewise, Dr. Haskell could not opine where the sock was prior to being placed in the mouth of Pool, nor could he discount the possibility that insects could have entered the body through the head, since the top of the head was open and buried in the dirt.

The jury heard the testimony of Dr. Bux and Dr. Haskell. By their verdict, the jury discounted the testimony and chose to believe that of the participants in the conspiracy

8

and the physical evidence that corroborated that testimony.  Such is the right of the jury, for it is the jury that heard the conflicting testimony and viewed the witnesses.  <u>Johnson v. State</u>, 23 S.W.3d 1, 8 (Tex.Crim.App. 2000).  The jury was in the best position to evaluate the credibility of the testimony and the weight and value to be given that testimony.  <u>Marshall v. State</u>, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).  We give due deference to the jury's determination.  <u>Johnson</u>, 23 S.W.3d at 9.  We remain convinced that the jury's verdict was neither irrational nor against the great weight and preponderance of the evidence.  Accordingly, we find the evidence was factually sufficient to support the verdict.

**Conclusion**

Having overruled appellant's contentions regarding the legal and factual sufficiency of the evidence, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.